UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DEVONTA ISABELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 15-2754-JDT-cgc |
| | ) |
| DETECTIVE SMITH, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On November 18, 2015, Plaintiff Devonta Isabell ("Isabell"), who is incarcerated at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On November 23, 2015, the Court ordered Isabell to comply with 28 U.S.C. §§ 1915(a)(1)-(2) or pay the civil filing fee. (ECF No. 3.) On December 28, 2015, Isabell filed a motion to proceed *in forma pauperis.* (ECF No. 4). In an order issued January 8, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk shall record the Defendants as Memphis Police Detective First Name Unknown ("FNU") Smith, Memphis Police Detective FNU Hick, and District Attorney Amy Weirich. Defendants are sued in their individual and official capacities.

I. The Complaint

Isabell alleges that on November 5, 2013, Memphis police officers, acting on false accusations and rumors procured from the victim of an alleged robbery and under orders from Defendants Hick and Smith, proceeded to Isabell's home, knocked on the door, and immediately seized Isabell and searched his home. (Compl. at 3, ECF No. 1.) Isabell was then taken from his home, placed in a police cruiser, and interrogated about crimes that had occurred three months prior. (*Id.* at 3-4.) Although Isabell denied any involvement and professed his innocence, probable cause was garnered from witnesses who are part of the "criminal milieu." (*Id.* at 4.) Isabell contends that he was arrested without probable cause as well as from evidence that should have been inadmissible under fruit of the poisonous tree doctrine and was obtained through the "explotation of illegality" by making suggestive comments to the alleged victim. (*Id.*) Confusingly, Isabell contends the defendant's "equivocal identification and codefendants was arrested without probable cause and coerced into providing inculpatory statement to police who were offered material gain." (*Id.*)

Isabell asserts claims of false arrest, false imprisonment, malicious prosecution and conspiracy. (*Id.* at 4.) Isabell alleges the Defendant Smith and Hicks, acting with "a racial and class based discriminatory animous[sic];" devised a plan to deprive Isabell of his rights. (*Id.* at 5.) Isabell alleges Defendant Smith placed Isabell in a false light by executing an affidavit of complaint and presenting deliberate falsehoods to procure an arrest warrant which was sold to media outlet for publication. (*Id.*) This same conduct caused Isabell emotional distress. (*Id.* at 5-6.) Isabell contends that he was falsely imprisoned on November 5, 2013, after he was informed of the charges and placed in detention awaiting his preliminary hearing, he was coerced by his court appointed attorney into unknowingly and involuntarily waiving his preliminary

hearing. (*Id.* at 6.) Isabell argues there was malicious prosecution and that because the alleged victim was led by affiant with suggestive circumstances that was instrumental in his identification and because he was coerced into providing an inculpatory statement to police, it rebuts the prima facie probable cause resulting from the indictment by the grand jury. (*Id.* at 6-7.) Lastly, Isabell alleges a conspiracy because Defendants Hick and Smith devised a plan to deprive him of his constitutional rights, Defendant Hick forged Isabell's signature on advice of right/waiver form, and Defendant Smith was a false witness to "this illegitimate process." (*Id.* at 7.)

Isabell seeks compensatory, punitive, and treble damages. (*Id.* at 8.)

By way of background, Isabell was arrested on November 27, 2013. On April 8, 2014, a grand jury in Shelby County, Tennessee returned an indictment for criminal theft of property. http://jssi.shelbycountytn.gov (Indictment # 14 01692). A second and third indictment were returned on May 29, 2014, charging Isabell for aggravated robbery. *Id.* (Indictment # 14 02741 and # 14 02742). A fourth indictment was returned on June 19, 2014, charging Isabell for aggravated robbery. *Id.* (Indictment # 14 02959). A fifth indictment was returned on December 18, 2014, charging Isabell with five counts of aggravated rape. *Id.* (Indictment # 14 06497). The charges for all the indictments remain pending.

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

3

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept

4

> "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Isabell filed his complaint pursuant to actions under 42 U.S.C. § 1983. Section 1983 provides:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Claims against Defendants Smith and Hick in their official capacity are brought against their employer, the City of Memphis. Claims against Defendant Weirich in her official capacity are brought against her employer the State of Tennessee. The complaint does not assert a valid claim against the City of Memphis. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue would be dispositive of Isabell's claims against the City of Memphis.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct

causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying

7

motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty. of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). Isabell's complaint does not allege that he was injured by an unconstitutional policy or custom of the City of Memphis.

Isabell cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Isabell cannot sue Defendant Weirich for money damages arising from the institution of criminal proceedings against him. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). Isabell's claim for money damages against Defendant Weirich for these activities is barred by absolute prosecutorial immunity. *Id.* at 427-28; *Burns v. Reed*, 500 U.S. 478, 490-492 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Therefore, she cannot be sued for malicious prosecution. *O'Neal v. O'Neal*, 23 F. App'x 368, 370 (6th Cir. 2001); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (noting that "prosecutors are absolutely immune from many malicious prosecution claims"); *Roybal v. State of Tenn. Dist. Attorney's Office*, 84 F. App'x 589 (6th Cir. 2003).

Isabell's claims against the Defendants for false arrest/arrest without probable cause, false imprisonment and conspiracy for said claims are time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). The Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384,

391-92, 397 (2007), makes clear that a claim for false arrest or false imprisonment accrues at the time of arrest or, at the latest, when detention without legal process ends.[1]

The Sixth Circuit has held that a Fourth Amendment claim based on an allegedly unlawful arrest accrues at the time of arrest. *Fox v. DeSoto*, 489 F.3d 227, 233, 235 (6th Cir. 2007). Isabell was arrested on November 27, 2013, and the first indictment was returned on April 8, 2014 with the other indictment following May 29, 2014 and June 19, 2014. He filed the complaint more than one year later, on November 18, 2015; therefore, the false arrest and false imprisonment claims are time barred.

The complaint also does not state a valid malicious prosecution claim against any Defendant. The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-

---

[1] The Supreme Court explained:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. . . . "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." . . . . Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was instituted against him, and the statute [of limitations] would have begun to run from that date.

*Id.* at 389-90 (emphasis in original; footnote and citations omitted); *see also id.* at 390 n.3 ("This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.").

16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace*, 549 U.S. at 390 (2007) (internal quotation marks omitted).

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F. 3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes v. Anderson*, 625 F. 3d 294, 308-09 (6th Cir. 2010) (footnote omitted).

The fact that Isabell was ultimately indicted by the grand jury shows the existence of probable cause for the charges. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F. 3d 868, 877 (6th Cir. 2002) (quoting Ex parte United States, 287 U.S. 241, 250, 53 S. Ct. 129, 77 L. Ed. 283 (1932)). In

light of the grand jury indictments, any malicious prosecution claim fails because Isabell cannot show the absence of probable cause.

For all of the foregoing reasons, Isabell's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Isabell's complaint cannot be cured, leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Isabell's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is DENIED because the deficiencies in Isabell's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Isabell in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Isabell would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Isabell nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Isabell is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by

filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Isabell, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                             **s/James D. Todd**
                                             JAMES D. TODD
                                             UNITED STATES DISTRICT JUDGE